May it please the Court, I'm Chris Landau with Kirkland & Ellis, and I'm here this morning on behalf of Beech-Nut, the appellant. I'd like to reserve 5 minutes of my time for rebuttal. This appeal is about the standard for dismissing a complaint alleging predatory pricing in violation of federal and state antitrust laws. The procedural posture of this appeal is critical. The District Court dismissed the complaint for failure to state a claim under Rule 12b-6. Two settled legal rules provide the basis for decision here. First, a District Court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support its claim. And second, the rules of pleading are no different in antitrust cases or predatory pricing cases specifically than in other cases. These two rules require reversal here because my client, Beech-Nut, can prove facts to support its antitrust claims. We just want our day in court to present those facts. The District Court, however, dismissed the complaint for failure to state a claim in violation of federal and state antitrust laws in an unpublished opinion and without oral argument. That's not right. The allegations in the complaint are more than sufficient to survive a motion to dismiss. As the Supreme Court held in Brook Group, which, by the way, was not a dismissal case, it was a J&OB case, a predatory pricing claim has two key elements, the low-cost pricing and recoupment. There is no question that the complaint pleaded both these elements. The complaint alleges that the defendant, Gerber, currently exercises monopoly power in the baby food industry with a national market share of over 70 percent and over 80 percent share in infant cereal. The complaint alleges that Gerber bid substantially below cost to win the sole source WIC contracts for infant cereal in California and Texas. Gerber is losing money on every box of infant cereal it sells to those states. The complaint alleges that Gerber engaged in predatory pricing on the WIC contracts to prevent a competitor like Beech-Nut from winning those contracts, which would allow the competitor to become a real player in those states and a threat to Gerber's current existing monopoly power. The complaint alleges that Gerber could recoup its losses on these WIC contracts by avoiding competition from Beech-Nut in the market for non-WIC infant cereal and for jarred baby food. And finally, the complaint alleges that Beech-Nut and other competitors cannot constrain Gerber's ability to recoup its losses on these WIC contracts because of Gerber's current monopoly power, which exists in part because of substantial barriers to entry and expansion. These barriers include Gerber's dominance of limited shelf space, strong brand recognition, and entrenched consumer loyalty. At the end of the day, this case is different than most other predatory pricing cases because the WIC sole source contract is not a predatory pricing case, but a monopoly maintenance case. Indeed, why else would Gerber sell infant cereal to the states at a substantial loss, as we've alleged, if it had no possibility of recouping that loss? Gerber's money-losing scheme makes no economic sense except as a means to keep its non-WIC baby food prices high. Maybe they're just good citizens. Well, Your Honor, we have alleged that they're not. I mean, again, if certainly at the motion to dismiss stage, that allegation states a claim upon which relief can be granted. They're entitled to argue. You know something? Our chief executive just loves WIC, and we don't have any predatory intent. But again, that's not even critical. A predatory pricing scheme, Your Honor, has two key components, substantive components, as the Supreme Court held in Brooke Group. It has the below-cost pricing, which we squarely allege really isn't even an issue here, and second, the recoupment mechanism. And so we really – the question is, have we stated enough on the complaint to at least create an inference, a plausible inference of such a claim? Your argument is that you've presented enough in the complaint to put them on notice of what your theory is. That's exactly right, Your Honor. Again, I think you've just hit the nail on the head in the sense notice is the key word. We have a regime of notice pleading, not fact pleading. That was one of the big innovations of the federal rules back in the 30s, that they were going to really simplify the complaint as a mechanism to put the other side on notice. And a motion – all you have to do under Rule 8 – this is actually really a civil procedure appeal, not an antitrust appeal. It's really about Rule 8 and a short and plain statement. And the district court dismissed it, and our point here is we more than satisfied Rule 8A2, which says it's just a short and plain statement. I must say you just wrote a better complaint here in argument than your actual complaint, but I understand your argument about Rule 8A. Let me follow up – it has not occurred to me until Judge Hawkins just asked this question – is there some special – I don't know what the right word is even – rule or maybe I should say interpretation that would prevent a company – here I'm not going to say Gerber – prevent a company from simply giving something to the government in hopes that it would allow them to make a lot of money at some later time? I'm thinking for example during World War II, lucky strikes were given out free to the troops, which produced an enormous brand loyalty after the war. Was that potentially an antitrust violation to give that away to the government? Your Honor, I don't see – I'm not aware of any exemption that would allow that. I suppose the government could always set up a program that would create such an exemption, but right now it's not contested that – in this appeal at least – that if we show below cost pricing and a possibility of recoupment, that we would state an antitrust claim. They've never claimed that they're within some kind of a Robin Hood kind of immunity or – Or because the government is the ultimate customer here? That's right, Your Honor. Okay. We're not aware of any such exception, and – I didn't see it in their papers. It occurred to me for the first time because Judge Hawkins' question had that interesting aspect to it. Okay. Right. The key point here is that the district court said many times over its opinion – kept saying, Beechnutt has not pleaded sufficient facts to prove this, to prove recoupment. Facts, facts. And again, I think this goes again to Judge Hawkins' question that – the point that this is a regime of notice pleading. You don't have to lay out all your facts in your complaint to survive a motion to dismiss. That's really – That's really the heart of this appeal, isn't it? Your complaint either does that or it doesn't do that. That's exactly right, Your Honor. And the point we would really emphasize is that what the district court here did essentially and actually literally on page three of its opinion is impose a heightened pleading standard for predatory pricing claims. And he says – Let's hear from your opponent. You'll have some time for rebuttal and you can come back. But this is the issue, right? You either rise or fall on your complaint. Yes, Your Honor. Again, it's a rule 8A, and I think it's just important to keep in mind, this is not the summary judgment stage. We're not standing here denying – we don't have to at this procedural posture of the case – that a predatory pricing claim is hard to prove on the merits. We're going to have to prove recoupment. The Supreme Court has made that requirement very clear. I think we understand that. Let's hear from Gerber. I'm Wayne Cross. I represent Gerber Products Company. I'll address your question directly. It is true that you don't have to plead all of the facts that you intend to prove. It is also true – and our briefs are full of the cases on it – that it's not sufficient – I'm sorry. Could you speak up a little? It is also true – and our briefs are full of citations of this – that it's not sufficient to plead legal conclusion, buzzwords and theories. And that's what we have here. It's not sufficient to plead the word recoupment. We have a way to prove recoupment. Mr. Landau just said, we can prove recoupment. You have to plead facts that lead a court to conclude that there's a rational recoupment scheme that can only succeed if you eliminate competitors or discipline them. Well, this is not securities fraud, where the Congress and the courts have layered on a requirement that results in these 300-page complaints with detail after detail that drive our friends on the district court star-craving mad. There's no special requirement that applies to this industry, is there? No, Your Honor. You have to meet the notice requirements of Rule 8. And if you have, you have. And the rest is up to discovery. But what the pleading requirement does require is that what you do plead when you plead notice is that what they plead makes sense, that it constitutes recoupment in the sense that the Berk group talks about it. What they plead here, Mr. Landau asked it. He said, why would Gerber sell at a loss except to exercise and maintain monopoly power? He said that's the question of the case. The question of the case is, they plead in their own complaint the reason that they wanted to win the WIC contract, because if they win the WIC contract, moms who buy jarred baby food will be brand loyal, the question Judge Fletcher asked, will be brand loyal because they've gotten used to the wonderful cereal that they had when the babies were infants, and they will buy more jarred cereal. So the answer to Mr. Landau's question is, why would we bid this contract low? It's because if we bid the contract low, as they plead in their complaint, we'll sell more jarred baby food. And it's a perfectly rational business scheme that has nothing to do with predation, has nothing to do with driving competitors from the market, has nothing to do with increasing market power or damaging competition. It has to do with winning a bid so that we'll sell more jarred baby food. It sounds to me like, it sounds to me like you believe that you could file a successful motion for summary judgment on either prong. You could move for summary judgment based on what we're doing with the WIC program absolutely does not constitute predatory pricing. End of story. And our second motion for summary judgment, Judge Burrell, is that they can't prove recoupment. That's right. This is a simple business decision by a company who wants to cooperate with the government in providing a decent infant formula to low-income families, and it's no more than that. We don't recoup that any more than Lucky Strike did when it gave cigarettes to World War II soldiers, right? I agree with you that those two motions will be made if this case is remanded. Our point on the pleading stage, though, I don't think we can plead the rational business decision on whether our costs are below cost or not below cost or we have to look at full-line pricing to determine whether they're below cost. Those are questions of fact. But when they pleaded recoupment, what they pleaded is a set of facts that said, you know, you will continue to sell at the prices you've always been selling at. That doesn't plead recoupment because if you think about what's happening, we're charging whatever we're charging for Bed, Jar, and Baby food. We're charging whatever we're charging for other lines of infant cereal. And under their theory, we lose money on the WICS bid. Now, Brook Group says we've got to make that money up somewhere else. Otherwise, you cannot draw an inference under Brook Group. Your response to them is it's not enough to say the reason you did this predatory pricing with the WIC program is so that you could recoup in other areas. It's not enough just to say you recouped. You've got to say you recouped by. By and that it makes sense. One, two, three, four, five. And that it makes sense. What I'm saying is whatever sales we were going to make of other forms of cereal and jarred baby food, we were going to make at the prices that we're making them. They don't allege that we're raising prices. So now we've got a situation where we're losing whatever it is. They claim we're losing $2 million a year on infant cereal. The question that Brook Group poses is do they plead a scenario in which we get that $2 million back? And the answer is they don't, because we're never going to get it back. We're still going to sell that jarred baby food. In fact, we may sell more jarred baby food, but we're never going to get that $2 million back under their recoupment theory. To have a recoupment theory that works, you've got to... And how do I say this? They've clearly alleged recoupment, and they've even given you facts to support recoupment in the early alleged facts in the complaint. Are we to say now this is, we're going to read that very narrowly, and if that theory narrowly construed doesn't constitute recoupment, that's the end of the game? You guys said recoupment, but the facts you pled, maybe you made a mistake in pleading any facts at all instead of simply saying recoupment. Are you saying they're narrowly limited to the facts they did plead for recoupment? The facts they did plead and the facts they didn't plead. What Brook Group teaches us is you have to be very skeptical of predatory pricing claims, because all of the literature and Brook Group sort of codifies it in the Supreme Court opinion. But that goes to his point as to proof, not as to what... Well, but you have to plead a theory that is rational, and they have not pleaded a theory that rationally articulates recoupment. If you plead, I'll be driven from the market, which is what was pled in Brook Group in all the cases that they cite. If you plead that you were driven from the market, then it makes sense, because then the monopolist is standing all alone, and he can do anything he wants with price. He can raise price, he can hurt competition. Competition's the key here. Yeah, I understand that. I'm looking at, for example, paragraph 25 of the complaint. That alleges, if I understand it properly, or at least I think this is a permissible understanding of paragraph 25 of the complaint, that simply by winning the WIC contract, Gerber is driving Beechnut off the shelf, and that for the sales within that store, there are supra-competitive prices, because, of course, not all of the Gerber infant formula within that store is being sold to WIC customers. That is to say, about half goes to non-WIC customers, and if they're the only infant formula seller within that store, well, that's a pretty good deal, because you lose money on the WIC infant formula, but you make a lot on the non-infant formula, because you've driven them off the shelf. That, I think, is a theory. The fact that's missing in that pleading, Your Honor, is they don't plead that. They don't plead that we raise the price of an infant series. Excuse me. I'll just read you the paragraph. Gerber has achieved this dominance in higher prices through efforts designed to limit competition. Gerber has engaged in efforts designed to squeeze Beechnut off the shelf. In order to prevent ensuing price, promotion, and market share competition without access to the shelf, customers lose an important choice, a choice that ultimately drives down the cost of baby food and threatens Gerber's super-competitive prices. I think, I mean, I might have stated the theory a little differently, but I think my theory is encompassed within paragraph 25. In order for, there's an assumption there, I mean, they're making an assumption that the prices that exist, a factual assumption, without factual support, that those prices are super-competitive. Let me explain. But then we're back to Rule 8. I mean, how much factual support do they have to put in? They have to, they can't put in pure speculation. I mean, in this particular case. Why can't they? Because I don't believe Rule 8 says you can simply speculate. Rule 11 says if it's purely speculative, you can go after them. But at this point, this is just allegations. Well, I disagree with what you could do. But let me explain, Your Honor. In this particular case, with this particular complaint, the fact that these prices are not super-competitive is contained within the four corners of the complaint. Because what they do plead is, in this complaint, is that for years and years and years, they had the WICS contract. And they hypothesized, in this paragraph, they hypothesized if they won the WICS contract, they would drive our prices down from what they call super-competitive prices. What they don't allege is that when we did win the WICS contract, we raised our prices. Or we stopped discounting. Or we stopped doing promotion. In other words, the prices we're charging now are the same prices we were charging when they had the WICS contract. By their hypothesis, we would have been driven to a lower level. It didn't happen. It didn't happen because these aren't super-competitive prices. And that's within the four corners of the complaint. Fact stuff. Maybe true, maybe not true. I can't tell. I think what Brooke Group is saying, and what the cases say, is that because you have to be very careful about this, you can't get away with simply pleading fanciful pleadings. One thing they pleaded, had not pleaded here at all. Return to the thesis. Brooke Group says you've got to look at competition, not competitors. They're talking about being squeezed off the shelf. They're talking about us being able to charge super-competitive prices. They don't allege one word in this complaint is the word Heinz. Heinz is the largest manufacturer of baby food in the world. They're bigger than Gerber by factors. We're talking the world now, not United States? Yes. And they are a significant player in this market, constraining Gerber. The D.C. Circuit found in their case where they were trying to merge with Heinz that Heinz exercised a competitive restraint on Gerber. They exercised a competitive restraint on Gerber. Heinz is a huge player. They don't mention him here. The point is that you're talking about whether or not competition will be injured. They're saying they've been injured. They lost two supermarket chains in California. They lost one in Texas. They've lost some distribution. But they don't say that competition has been injured. They don't say that consumer choice has been reduced by our WIC's bid. It's very artful pleading. I give them credit. It's a very cleverly drafted complaint. I just read paragraph 25. They say competition has been limited. And they may be dead wrong. I'm not saying they're right. I have no idea whether they're right. Your Honor, I don't believe that it's permissible under Rule 8 to just plead fancy. They're pleading a market of two competitors. They're pleading a market of us and them and ignoring Heinz and ignoring the impact of Heinz on competition. I don't think you can simply shut your eyes to it and say, What's that got to do with the original pleading? The pleading is that there's no restraint on Gerber's ability to price and that super competitive prices exist in the marketplace. Your response? My response is, regardless of what they claim that they've been weakened, they don't say anything about Heinz. Their pleading only says, because we lost this WIC's contract, we've been weakened, and we can't restrain their ability to charge super competitive prices. That's a factual dispute. It's clearly not true, but it's a factual dispute. What they don't allege any place in this complaint is that Heinz has been disciplined, that Heinz has been eliminated, that Heinz doesn't restrain our ability to charge super competitive prices. And competition is the key here, not what happened to them. The Supreme Court and all the courts don't care what happened to them. They care what happens to competition. They care what choices consumers have, who's on the shelves. If they're losing distribution in California, they're not losing it to us. We're in 100 percent of the stores. They don't allege that our share of the market in California has gone up. If they've lost market share in California, they've lost it to Heinz. They didn't lose it to us. The point is, Heinz is out there competing. Consumers are not being injured by this. It sounds like a good case for summary judgment to me. I think it's an excellent case for summary judgment, Your Honor, but I don't think we ought to have to spend $4 or $5 million figuring it out. I think the pleadings are not sufficient. I mean, we should sustain based on what you just told us here in your argument, instead of having affidavits and all this stuff? I'm talking about things that are in this record. I mean, they have argued that ---- What we have in the record is a complaint, period. No, we also have in the record, because they put it in the record, we also have the D.C. Circuit's decision in the Heinz case, in the FTC v. Heinz case, and that lays out all these facts that I just laid out. If we send it back and you prevail, your client prevails on summary judgment, are your fees recoverable? I haven't looked at that, but I don't believe so. I'm not ---- under the Civil Rights Act prevailing parties, I'm not sure that a defendant's fees are recoverable in an antitrust case. I'm not going to commit myself, but I don't think that's the case. It's an unfair question in the sense I don't know the answer to it. I just wonder. You may well be right. Your Honor, I think I probably covered most of what I was going to say. I mean, the main point here is that we have to be very ---- price competition is the paradigm of the antitrust laws. What we engaged in is price competition. Brooke Group says be very, very careful when you permit predatory pricing cases to go forward. If they don't have a theory that makes sense, it's not just enough to say the word recoupment. That's just a buzzword. They may have to plead something that says if we lose $5 million in the three years of this contract, we'll make it up later someplace else. We'll be $5 million better off someplace else. And they haven't pleaded that. Under the theory of predatory pricing, does it have to be we'll make it up later someplace else or just we have to make it up someplace else? I haven't seen a case where simultaneous recoupment takes place. They plead it, but I haven't seen it. That's an interesting theory. It's an interesting question. But I think the answer to it is so long as there are viable competitors in the marketplace, we'll never be able to charge super competitive prices because somebody will bid us down. These are not infant players here, pardon the pun. You've got two big corporate entities. They have $150 million a year in sales. Heinz has billions of years in sales with all kinds of excess capacity. They said there's no barriers to expansion here. They testified in the FTC proceeding that Heinz is only occupying 40% of its baby food plant, that Heinz could take over all of their production, which is 15% of the market, and having taken over all of their production at that plant, then make inroads of 20% on Gerber. That's to say Heinz has capacity for 50% of this market, and they're currently using 15% of it. In that kind of scenario, they have to plead something pretty special to say that competition is going to be hurt. We recognize that they say they've been hurt, but that's not the issue. And with that, I leave you there. Thank you for your argument, counsel. It was very helpful. Rebuttal. Do you know the answer to the question I posed about fees? No, Your Honor. I don't believe that fees are recoverable, although maybe under the Clayton Act specifically there may be some special provision. But, again, to the extent they're concerned and they're really coming here and saying, gee, let's bend the rules of pleading because we're pretty sure they're going to lose anyway and they're going to make us spend a lot of money. I understand. They can tell the district court, you know, limit this. There are ways that district courts can deal with this. And this is, again, the key point here is the procedural posture. And I think, as a number of you have pointed out this morning, this is really the argument we're hearing, a summary judgment argument, and that's just not the posture of the case. Now, as was just said, the question is, have we pleaded a rational recoupment scheme? And the answer to that, as Judge Fletcher pointed out, is yes. You may disagree with that scheme, say we're not likely to prove it. What we have said is that by bidding low on these contracts and winning them by these predatory pricing actions, they more than recoup their investment in that by avoiding competition from us in the market for non-WIC infant cereal and jarred baby food. And avoiding that competition is their recoupment mechanism. What's your response to the Hines argument? Well, Your Honor, again, we do say in our complaint. You know, there is some appeal to the notion that what you're saying is that they exercise monopoly power in the baby food market, and you file this lengthy complaint, and it doesn't mention the other major player. Well, Your Honor, it says in paragraph 1, actually, this is engage in predatory action to limit competition from plaintiff, Beech-Nut Corporation, and others. In other words, we've never said that we're the only two players in the market. What we do allege, Your Honor, is that they do have monopoly power, and that means by definition that they have the power to set prices unconstrained by rivals. It doesn't matter whether it's one rival or two rival. It could be if it was one or two. It really doesn't matter because what we have alleged is that they have this power, and that gives them the ability to recoup. So when you're hearing this morning that all we've alleged is a legal conclusion of recoupment, that's simply not true. The complaint goes, I think, far beyond the requirements of Rule 8A, which is, again, a short and plain statement of the claim, and really explains a recoupment scheme for avoiding competition in these other markets that, again, whether or not we can prove that, whether or not it's a viable scheme on the merits, that's another question. But, again, their reliance on Brook Group, I think, is just really misplaced because Brook Group is not a pleading case. Brook Group does not say anything about a heightened pleading standard for these kind of claims, and there's a big difference between the ultimate substantive evidentiary standard, as you understand, and the pleading requirements. And so when they say we haven't pleaded any kind of a plausible scheme for recoupment, we have pleaded that, Your Honor. So we understand your position quite well. I don't see any other questions. Thank both sides for their argument. They're very helpful. This is not an easy case, and we appreciate your help. Thank you. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: Hawkins, W.fletcher, King